# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DALE V. HEMPSEED, II,** ) | |
| Plaintiff, ) | |
| ) | **Civil Action No. 07-1289** |
| v. ) | |
| ) | **Judge Nora Barry Fischer** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY**, ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiff, Dale V. Hempseed, II, (hereinafter, "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's claimed period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") pursuant to sections 216(I), 223, and 1614(a)(3) of the Social Security Act, as amended ("the Act").  This matter comes before the Court on cross-motions for summary judgment and the supporting briefs of both parties, filed pursuant to Federal Rule of Civil Procedure 56.  The record has been developed and transcribed at the administrative level.  For the following reasons, the Commissioner of Social Security's motion for summary judgment is granted.

### II.    PROCEDURAL HISTORY

Plaintiff  filed applications for a claimed period of disability, DIB, and SSI on December 8, 2005.  (Docket No. 3 at 22, R. at 22);  (hereinafter, "R. at __").  Disability was alleged to begin on

October 31, 2004.  (R. at 22).    The claims were denied on May 10, 2006.  (R. at 22).   On January 16, 2007, a hearing was held by the Administrative Law Judge, Richard A. Kelly, ("ALJ") via videoconferencing from Philadelphia, Pennsylvania.  (R. at 22).  Plaintiff appeared in Pittsburgh, Pennsylvania with counsel and testified on his own behalf.  (R. at 14).  William M. O'Toole,[1] an impartial vocational expert, also testified.  (R. at 22).  On March 6, 2007, the ALJ issued a decision in which he found that Plaintiff was not "disabled" within the meaning of the Social Security Act. (R. at 30).  The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the commission. (R. at 7-9).  Plaintiff seeks review of that decision, which is before this Court on cross-motions for summary judgment.

## III.    STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 108 S. Ct. 2541, 2545 (1988).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the

---

[1]    William M. O'Toole was admitted as an expert witness and was unopposed.

factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [him] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions. *Baerga v. Richardson*, 500 F.2d 309, 312-13 (3d Cir. 1974). He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> [I]f at any step a finding of disability or non-disability can be made,

the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

## IV.     SUBSTANCE ABUSE AS A FACTOR IN DETERMINING DISABILITY

If an individual is declared disabled under the act at any step and drug or alcohol use is present, further inquiry is necessary pursuant to 42 U.S.C. § 423 (d)(2)(c). "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the determination that the individual is disabled." 42 U.S.C. § 423 (d)(2)(c). The "key factor" in the decision is "whether we would still find [Plaintiff] disabled if [Plaintiff] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1). To determine the extent of disability, the ALJ will decide which of the claimant's current physical and mental limitations, on which the original disability ruling was based,

would remain if the claimant stopped the substance use. 20 C.F.R. § 416.935(b)(2). The ALJ must then determine if the claimant's remaining limitations would be disabling. If the remaining limitations are found to be disabling, then the drug addiction is not a contributing factor material to the determination of disability, and the plaintiff is deemed to be disabled. 20 C.F.R. § 416.935(b)(2)(ii). However, if the ALJ finds that the remaining limitations are not disabling, then the drug addiction or alcoholism is a contributing factor material to the determination of disability, and the plaintiff is not deemed to be disabled. 20 C.F.R. § 416.935(b)(2)(i). Further, in materiality determinations pursuant to 42 U.S.C. § 423 (d)(2)(c), "[Plaintiff] bears the burden of showing that [his] alcoholism or drug addiction is not a contributing factor material to [his] disability." *Brown v. Apfel*, 192 F.3d 492, 64 Soc. Sec. Rep. Serv. 128 (5th Cir. 1999); *Doughty v. Apfel*, 245 F.3d 1274, Soc. Sec. Rep. Serv. 288, (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 70 Soc. Sec. Rep. Serv. 396 (8th Cir. 2000); *Ball v. Massanari*, 254 F.3d 817, 74 Soc. Sec. Rep.Serv. 315 (9th Cir. 2001)(citing 42 U.S.C. § 423(d)(2)(c)). (See footnote 11).

## V. ADMINISTRATIVE LAW JUDGE'S OPINION

Utilizing the five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520, the ALJ determined that, at step one, Plaintiff had not engaged in substantial gainful activity since October 31, 2004, the alleged onset date of the disability. (R. at 25). At step two, the ALJ found Plaintiff to be suffering from the following severe impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c): cocaine and polysubstance abuse disorder and musculoskeletal difficulty. (R. at 25). Specifically, Plaintiff had been seen intermittently at the Greenbriar Treatment Center for substance abuse rehabilitation, and had been referenced as having minimal motivation for treatment. (R. at 25). Evaluating the musculoskeletal difficulty at step two, the ALJ provided an

extensive analysis of the abundant medical reports in the record. Although this was done to evaluate the severity of the back impairment, the ALJ makes reference to this analysis numerous times during his opinion. The ALJ began:

> On October 17, 2005, Dr. Gaffney noted that the [plaintiff], upon examination, had normal neurological findings; his straight leg raising indicated hamstring tightness but no radicular symptoms, and [his] strength and reflexes were intact throughout his lower extremities, as was sensation.

(R. at 25 (citing Docket No. 3-4 at 2-9)). The Court notes that Dr. Gaffney's physical therapy referral report provided that Plaintiff had a history of chronic lower back pain but no specific injury. Plaintiff was told that he had arthritis in his back and was advised to do therapy for the aforementioned arthritis, but he did not pursue therapy. (Docket No. 3-4 at 2-9). The ALJ next considered the clinical examination, performed by Dr. Bonaroti, on November 11, 2005, (R. at 25 (citing Docket No. 3-4 at 47-53)) and Dr. Lieber's report from December 7, 2005. (R. at 25 (citing Docket No. 3-4 at 20-26)). Drawing from both reports, the ALJ noted:

> [Plaintiff] was again found to have normal neurological findings, and negative straight leg raising. It was felt that [Plaintiff's] L5/S1 was his pain generator, and that the claimant wanted to proceed to surgery...

 (R. at 25). On March 1, 2006, Plaintiff underwent minimally invasive surgery with no complications. (Docket No. 3-4 at 28-46). The Court further recognizes that according to a post-surgery evaluation, Plaintiff was "actually doing reasonably well." (Docket No. 3-4 at 47). Finally, the ALJ reviewed the clinical consultive examination report of Dr. Firoz. This report is dated April 18, 2006, and indicates that Plaintiff was in no acute distress. He was able to get up from his chair, and on and off the examination table without assistance. He had full range of motion and full

strength in his extremities and his abdominal examination was within normal limits. Dr. Firoz assessed the claimant as essentially having the capacity for light work. (R. at 25-26; Docket No. 3-5 at 1-8). Additionally, in this report, the Court notes that Plaintiff was considered moderately obese, weighing 235 pounds and standing six feet tall, had a full range of motion in his extremities, still suffered lower back pain, suffered only mildly elevated hypertension, and that his bipolar disorder was stable. (Docket No. 3-5 at 3-4). The ALJ also found that the "[c]laimant had a history of cocaine and polysubstance abuse, which continued until at least August 2005 and caused a mood disorder (induced by and dependent on the substance abuse)." (R. at 25). Finally, the ALJ found that Plaintiff's benign gastric ulcer and mild inactive gastritis were not severe. (R. at 26).

At step three, the ALJ determined that Plaintiff's impairments, including the substance abuse disorder, were severe enough to meet the Listed Impairments of 12.09/12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d) and 416.920(d)).[2] The ALJ did not consider the musculoskeletal difficulty at step three because the mental impairments were on the List. (R. at 26). Because the combined effect of all the disabling factors was sufficient to warrant a granting of disability under the Act at step three, the ALJ did not need to proceed further with his initial determination. However, pursuant to 42 U.S.C. § 423 (d)(2)(c) and 20 C.F.R. § 416.935, the ALJ was then required to consider the extent to which the cocaine and polysubstance abuse is a contributing factor material to the determination of Plaintiff's disability. *See Torres v. Chater*, 125 F.3d 166 (3d Cir. 1997).

---

[2]

Specifically, "the drug and alcohol abuse results, with regard to the "B" criteria, in at least three of the required functional categories: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace [met the requirements of the List.]" (R. at 26).

Passing over steps four and five, the ALJ turned back to the five step disability analysis and began the substance abuse evaluation at step two. The ALJ determined that, if Plaintiff stopped using drugs and alcohol, a mood disorder and a severe musculoskeletal impairment would remain. (R. at 26). The ALJ addressed each limitation, in turn.

The ALJ first analyzed the mood disorder. At step two, the mood disorder, which was diagnosed but not specified as bi-polarity by the ALJ (Docket No. 3-6 at 21; Docket No. 3-7 at 17 (latest diagnosis 3/15/2006)), was determined to be non-severe and thus non-disabling within the meaning of the Act. (R. at 24; Docket No. 3-5 at 17 (Dr. Croyle 5/4/2006)). The ALJ supported this finding with the totality of the evidence in the record including Dr. Croyle's evaluation. (Docket No. 3-5 at 27).

The ALJ further discussed the musculoskeletal impairment. At step two, the ALJ found Plaintiff's musculoskeletal impairment to be severe. (R. at 26). The ALJ determined then, at step three, that "[i]f the [Plaintiff] stopped the substance use, [Plaintiff] would not have an impairment or combination of impairments that meets or medically equals any of the impairments [on the List]." (R. at 27). He specifically noted that "...lumbar spine impairment does not meet Listing 1.04A." (R. at 27). The ALJ next determined that "[i]f the [plaintiff] stopped the substance use, [he] would have the residual functional capacity to perform a full range of light work (including lifting 10 pounds frequently and 20 pounds occasionally)." (R. at 27). In making the step three and residual functional capacity determinations, "[t]he [ALJ] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence, [including] opinion evidence."[3]  (R. at 27-28).   At step four, the ALJ found that

Plaintiff could not perform his relevant past work. (R. at 29).  At step five, based on the residual

functional capacity and considering plaintiff's age, education, and work experience, the ALJ

determined that "there would be a significant number of jobs in the national economy that the

[plaintiff] could perform."  (R. at 29; Docket No. 3-2 at 63-64).

Accordingly, the ALJ found that absent substance abuse, the mental condition would not be

severe, and the musculoskeletal impairment would not be disabling. (R. at 26, 30).  He also held that

if Plaintiff discontinued his cocaine and polysubstance abuse, there would be no remaining

disabilities which would preclude him from performing maintainable jobs that are available in

significant numbers in the national economy.  (R. at 30).  Since the cocaine and polysubstance abuse

is a contributing factor material to the determination of Plaintiff's disability, the ALJ found that

Plaintiff was not disabled.  (R. at 30).

## VI.    ISSUES PRESENTED BY THE PLAINTIFF ON APPEAL

The following issues have been brought to the Court's attention: (A) whether  the ALJ's

decision that, absent substance abuse, Plaintiff did not suffer from any severe or disabling mental

condition, was supported by substantial evidence, or the ALJ erred by ignoring the evidence of

record and substituted his own opinions for those of the physicians; and (B) whether the ALJ's

decision that, absent substance abuse, Plaintiff's combined physical and mental impairments would

---

[3]

This was done "based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, SSR §§
96-4p and 96-7p, 20 C.F.R. §§ 404.1527 and 416.927 and SSR §§ 96-2p, 96-5p, 96-6p, and 06-3p."
(R. at 27).  The ALJ also addressed the certainty to which medical techniques could be expected to
produce Plaintiff's pain and/or symptoms, and he addressed the credibility of Plaintiff's statements.
(R. at 27).

not be disabling, was supported by substantial evidence, such that Plaintiff did not have the capacity to perform 'light work,' and his condition was more severe than 'musculoskeletal difficulty.' The Court will address each of Plaintiff's arguments, in turn.[4]

**(A) Alleged Substitution**

First, Plaintiff argues that the ALJ erred by ignoring the evidence of record and substituting his own opinions for those of Plaintiff's physicians. (Docket No. 6 at 6). Plaintiff claims that the ALJ overlooked evidence which established that he was diagnosed with bipolar disorder. (Docket. No. 6 at 8). Further, Plaintiff argues that the ALJ's finding that his mood disorder was induced by, or dependant on, his substance abuse disorder was contrary to the medical evidence of record and not supported by substantial evidence. (Docket. No. 6 at 9). Plaintiff asserts that the ALJ "play[ed] doctor," when crafting his disability opinion.[5] Plaintiff additionally points to a Global Assessment of Functioning ("GAF") score as being demonstrative of his disability. (Docket No. 6 at 9). ("GAF")

The case relied upon by Plaintiff, *Kangail v. Barnhart*, 454 F.3d 627 (7th Cir. 2006), is distinguishable from the instant matter. The evidence in that case showed that the bipolar disorder of the plaintiff had severe and disabling effects, absent substance abuse, which prevented the plaintiff from maintaining a job. Ms. Kangail presented evidence, corroborated by her medical records, which "showed that she had lost many [of those] jobs because of her bipolar symptoms." *Id*. This is not the situation before this Court because no such evidence is in the record. In light of Plaintiff's lack of evidence in this matter and his burden as described in *Brown*, this Court will address whether

---

[4]

The Court will address the disability decision within the scope of 42 U.S.C. § 423(d)(2)(c).

[5]

The Court notes that Plaintiff cites only one Seventh Circuit decision and no Third Circuit decisions in support of his "playing doctor" argument.

the ALJ's decision, concerning medial opinions in the record, was supported by substantial evidence.

The Social Security regulations prescribe the manner in which medical opinions are to be evaluated. *See* 20 C.F.R. § 404.1527(d). The ALJ must consider the examining relationship, the treatment relationship, the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship between the physician and patient. *Id.*; *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001). Based on this examination, the ALJ may weigh the evidence and determine the credibility of the relative sources. *Id.* So long as the conclusions expressed by a treating source are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record," they are given controlling weight. 20 C.F.R § 404.1527(d)(2). This Court may not re-weigh evidence of record even if discredited by the ALJ; the Court's review is limited to determining if the ALJ's decisions are supported by substantial evidence. *See Monsour*, 806 F.2d at 1190. Ultimately, it is the ALJ's responsibility to resolve conflicting medical evidence and provide specific reasons for doing so. *See Cotter*, 642 F.2d at 705.

Highlighting inconsistencies in the medical reports, the ALJ discredited the DPA Employability Assessment Form giving specific reasons. (R. at 28).[6] The ALJ found the discredited report to be inconsistent with other medical evidence of record. (R. at 29). Plaintiff does not indicate in his brief, and the Court did not find any credible evidence in the record, which showed that, absent

---

[6]

The ALJ held that "...in the Commonwealth of Pennsylvania, such forms must periodically be completed by the treating physician of a recipient of public assistance benefits in order for the beneficiary to continue 'in and pay status,' to continue to be eligible for medical coverage, and for the attending physician to be reimbursed for the cost of services rendered. Such a conclusion is otherwise not supported by evidence of record, and is not accorded significant weight by the undersigned." (R. at 28).

the polysubstance abuse, the bipolar or mood disorder prevented him from performing basic work activities. In fact, Plaintiff alleges and indeed presents evidence supporting a history of bipolar disorder, allegedly prior to the substance abuse, but fails to cite any time or occurrence when, absent substance abuse, the bipolarity prevented the completion of basic work activities. Further, when Plaintiff last worked "[h]e reported on time, maintained good attendance, concentrated for extended periods, got along well with supervisors and coworkers, and accepted workplace changes without difficulty." (Docket No. 8 at 3 (citing Docket No. 3-3 at 17-18)). Additionally, in the Family Services Report of mental status exams on November 15, 2006, Plaintiff's speech, thought processes, perception, orientation, and alertness were all reported to be within normal limits. (Docket No. 3-7 at 345-359). Finally, even though Plaintiff admittedly stopped taking his medications, the bipolar disorder was not listed as "severe" or "disabling" in any credible medical report in the record.[7] (Docket No. 3-7 at 19). Therefore, this Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's bipolar disorder, absent polysubstance abuse, is not severe.

Further, this Court finds that the ALJ considered the evidence of record and did not substitute his own opinion for those of the physicians. Initially, he considered the combination of Plaintiff's mental conditions, those both severe and non-severe, and categorized them as a mood disorder, thereby including Plaintiff's alleged subjective complaints of pain. (R. at 26; Docket No. 3-5 at 17). Dr. Croyle diagnosed the affective mood disorder as bipolar disorder and noted the substance abuse disorder in his report. (Docket No. 3-5 at 17). Both the substance abuse disorder and the affective

---

[7]  The Court calls attention to Dr. Firoz's report which reflected that Plaintiff's bipolar disorder was stable. (Docket No. 3-5 at 4).

mood disorder were listed as "Categories Upon Which the Medical Disposition is Based." (Docket No. 3-5 at 17). In that same report, the medical disposition was determined to be non-severe. (Docket No. 3-5 at 17). However, the ALJ determined that the medical impairments were severe because of the substance abuse disorder. (R. at 26). In making this determination, the ALJ gave sufficient weight to other credible evidence including Plaintiff's own testimony and medical reports. (R. at 26). Therefore, this Court finds that the record does not reflect any instance where Plaintiff's bipolar disorder, independent of substance abuse, prevented Plaintiff from completing basic work activities, such that said disorder would be considered "severe;" as such, the ALJ did not substitute his opinion for those of the physicians. The Court finds that the ALJ's opinion was substantially supported by those of the physicians.[8]

---

[8]

Further, this Court finds that, even though the ALJ was not required to go beyond evaluating the severity of the mood disorder absent substance abuse, there is substantial evidence in the record to indicate that the mood disorder would not meet any Listed impairments in Appendix 1, 20 C.F.R. Part 404, Subpart P, specifically sections 12.09/12.04, under the third step. (Section 12.09 addresses the evaluation of substance abuse disorders which directs the ALJ, in the case of Depressive syndrome, a characteristic of bipolar disorder, to evaluate under section 12.04).

In order to be granted disability under the third step of the sequential process, Plaintiff's impairments, which enabled Plaintiff to survive step two, must meet [or equal] one of the listed severe impairments to render one disabled. 20 C.F.R. § 404.1520. The applicable section reads:

> 12.04 Affective Disorders:
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
> ...
>
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); and

Secondly, Plaintiff alleges that the ALJ ruled that the bi-polar disorder was caused by substance abuse. (Docket No. 6 at 9). Upon review of the record, this Court does not find a single instance where the ALJ claimed specifically that Plaintiff's bipolarity was induced by the substance abuse. In fact, the ALJ was careful to follow the diagnostic wording of "mood disorder" from the Greenbriar reports when specifically speaking about the inducement consideration. (R. at 25-26). Further, Plaintiff's proffered evidence reflects that upon his release from the Greenbriar Treatment Center, he was suffering from, among other things, "Substance-induced Mood Disorder." (Docket No. 3-6 at 21). In that same document, however, it is established that Plaintiff began his drug abuse at age fifteen and does not provide any time frame for the onset of his bipolarity. (Docket No. 3-7 at 28-30). Regardless, the Court could not find, and notes that Plaintiff did not indicate, any specific

---

...

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning;
3. Marked difficulties in maintaining concentration, persistenceor pace; or
4. Repeated episodes of decompensation, each of extended duration.
20 C.F.R. Pt. 404, Subpt P, App. 1, §12.04.

Bipolar syndrome is not, in and of itself, enough to meet the listing requirements to pass the third level of the sequential process for an affective disorder. The B category of Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, § 12.04 must also be satisfied in order for Plaintiff to be disabled under the Act. The ALJ determined, through the medical assessments and Plaintiff's testimony, that the B category was initially satisfied by Plaintiff's drug and alcohol abuse, and the A category was satisfied by the credible nonexertional symptoms caused or characterized by the bipolar disorder. (R. at 26). The ALJ then determined that, absent the substance abuse, there would be no substantial credible evidence on the record to support a finding that the B [or C] category was satisfied. (R. at 26). Therefore, without addressing the "chicken and egg" argument with respect to substance abuse and bipolarity, the evaluation moves onto the fourth and fifth steps, because there is no disabling mental disorder, which meets the List, under this Act. However, because the ALJ found that, absent substance abuse, Plaintiff's bipolar disorder is not "severe", the causal argument is moot.

14

evidence to support his allegation.

Finally, Plaintiff points to his GAF score as additional evidence ignored by the ALJ. (Docket No. 6 at 9). A GAF score alone is not enough to determine disability and does not directly follow the severity rating system of the Commissioner's regulations. 65 F.R. §§ 50746-01, 50764-65 (2000). If Plaintiff has a GAF score of 55 (non-severe),[9] which is inconsistent with evidence of record, the ALJ need not weigh it significantly. (Docket No. 8 at 13). (*citing,* 20 C.F.R. §§ 404.1527(c)(2), (d)(4); 416.927(c)(2), (d)(4)). Regardless, there is no evidence in any credible medical report that Plaintiff's bi-polar disorder is severe, or that it interfered with his ability to perform basic work activities.

The burden is on the plaintiff to prove the severity of his disorder at step two absent substance abuse. *Brown v. 192 F. 3d 492*; *Doughty*, 245 F.3d 1274; *Pettit*, 218 F.3d 901; *Ball*, 254 F.3d 817.[10] The Court finds that the ALJ relied on and identified sufficient medical evidence to

---

[9]

A GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *(Diagnostic and Statistical Manual of Mental Disorders,* 4th ed.2000, *("DSM-IV")* at 34). A score of 50 is on the borderline between serious and moderate symptoms. GAF scores between 51 and 60 indicate moderate symptoms (e.g., circumstantial speech and occasional panic attacks or moderate difficulty in social or occupational functioning as evidenced by new friends conflicts with peers or coworkers). *See DSM-IV* (4th ed.2000).

[10]

In determining that alcoholism or drug addiction was a contributing factor material to the determination of disability, as would preclude an award of benefits, "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(a); *Lang v. Barnhart*, slip copy, 115 Soc. Sec. Rep. Serv. 533, 2006 WL 3858579, at *4 (W.D. Pa, 2006), holds that "[t]he claimant, however, has the burden of showing that alcoholism was not a contributing factor material to the disability determination." (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003).

support his conclusion that Plaintiff's bi-polar disorder would not be disabling if he stopped the substance abuse. In this Court's estimation, the substantiality of the evidence relied upon by the ALJ is sufficiently reasonable and adequate to support his conclusion that the alcohol and polysubstance abuse was a contributing factor material to the determination of Plaintiff's disability.

### (B) Residual Functional Capacity and Step "Five"

Plaintiff next argues that the ALJ's decision that, absent substance abuse, Plaintiff's physical and mental impairments would allow him to perform light work, is not supported by substantial evidence. (Docket. No. 6 at 10). Plaintiff also contends that the categorization of musculoskeletal difficulty does not sufficiently represent the severity of his back impairment, suggesting that degenerative disc disease is a better representation of his limitations. (Docket. No. 6 at 10).[11] Noting that a credibility issue was not specifically raised and that no standard or case was presented to contest the ALJ's decision, this Court will consider Plaintiff's argument that his, "problem is much more significant than just a musculoskeletal difficulty." (Docket No. 6 at 10).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a plaintiff from performing any substantial gainful work. *See Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987) (citing *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984)); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a plaintiff's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999). Where a medical

---

[11]    In the interest of judicial economy, the Court will refer the parties to the preceding analysis of Plaintiff's mental condition for purposes of this subsection.

impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the

intensity and persistence of the pain or symptom, and the extent to which it affects the individual's

ability to work. This evaluation requires the ALJ to determine the extent to which a plaintiff is

accurately stating the degree of pain or the extent to which he is disabled by it. *See* 20 C.F.R. §

404.1529(c) (2002); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). This determination by

the ALJ is given great deference by the Court. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

If an ALJ concludes the plaintiff's testimony is not credible, the specific basis for such a

conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States

Court of Appeals for the Third Circuit has stated that,

> [i]n all cases in which pain or other symptoms are alleged, the
> determination or decision rationale must contain a thorough
> discussion and analysis of the objective medical and the other
> evidence, including the individual's complaints of pain or other
> symptoms and the adjudicator's personal observations. The rationale
> must include a resolution of any inconsistencies in the evidence as a
> whole and set forth a logical explanation of the individual's ability to
> work.

*Schaudeck*, 181 F. 3d at 433 (*quoting* Social Security Ruling ("SSR") 95-5p.) "There must be

objective medical evidence of some condition that could reasonably produce pain, there need not be

objective evidence of the pain itself." *Green,* 749 F.2d at 1070-71 (*quoting Mason v. Shalala,* 994

F.2d 1058, 1067 (3d Cir. 1993)). "Once a plaintiff has submitted sufficient evidence to support his

or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the

plaintiff's evidence. Instead, the Secretary must present evidence to refute the claim. *See Smith v.

Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where plaintiff's testimony is reasonably supported by

medical evidence, the finder of fact may not discount the testimony without contrary medical

evidence." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992), *cert. denied* 507 U.S. 924

(1993).

The ALJ determined that the only remaining severe limitation that would be sufficient to move the analysis past step two was the musculoskeletal impairment. (R. at 26). Reviewing the third step in greater detail, the Court finds that the ALJ addressed the severity of the lumbar spine impairment and determined that it did not meet sections 1.04 (A),(B), or (C), regarding severe impairments.[12] (R. at 27).

The ALJ specifically stated:

> "[Plaintiff's impairment] is not associated with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss ... It is not associated with spinal arachnoiditis... resulting in the need for changes in position or posture more than once every

---

[12]

Section 1.04, entitled "Disorders of the Spine," provides:
> (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b

(20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.04(A), 1.04(B), 1.04(C)).

> 2 hours. Finally, this impairment is not associated with lumbar spinal stenosis... resulting in inability to ambulate effectively."

(R. at 27).

The ALJ's analysis is supported by the assessments of Dr. Firoz and Dr. Bonaroti, which were performed after the surgery date. (R. at 25).[13] The ALJ determined that there is no disabling physical disorder which meets or equals the List under this Act and moved onto the residual functional capacity step. (R. at 27).

When determining Plaintiff's residual functional capacity to perform light work, the ALJ considered the objective medical evidence, Plaintiff's daily activities, the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms, the factors that aggravate those symptoms, the type, dosage, effectiveness, and side effects of any medication, any treatment undertaken, any relief measures other than treatment, and any factors concerning functional limitations of the Plaintiff. (R. at 27-28).[14] Considering all these limitations, the ALJ then determined the credibility of Plaintiff's statements concerning the intensity, persistence, and limiting effects of these factors. (R. at 28). Comparing Plaintiff's testimony and the above factors, the ALJ

---

[13]

Dr. Firoz's report provides that, "[t]he claimant was in no acute distress, and ambulated with a normal gait without assistive devices. He was able to get up from his chair, and on and off the examination table without assistance. He had full range of motion and full strength in his extremities." (R. at 25-26; Docket No. 3-5 at 1-8). During a follow-up examination with Dr. Bonaroti, it was noted that Plaintiff's fusion was still in excellent position, he had only a mildly restricted range of motion, and his lower back was nontender on palpation. (Docket No. 3-5 at 47).

[14]

The record shows that the ALJ considered Plaintiff's testimony that he was able to "take care of household activities including cooking, washing dishes, sweeping, vacuuming and washing clothes; and he can do food shopping but his son helps by going to the store. He also goes to Church services twice per week and had no problems with arms, hands or fingers; can reach above head; and can walk up and down steps." (R. at 26).

found that Plaintiff's assertions were not entirely credible because they were inconsistent with contrary medical evidence and psychiatric evaluations.[15] (R. at 28). Accordingly, after weighing the credibility of Plaintiff's testimony, the ALJ determined that Plaintiff essentially had the capacity for light work. (R. at 27).[16]

Further, the ALJ asked the vocational expert if an individual with Plaintiff's age and education, who could frequently lift 5 pounds and occasionally lift 10 pounds, stand/walk for up to four hours per day, and sit for up to four hours per day could perform work in the national economy. (Docket No. 3-2 at 10-11). In response, the vocational expert testified that such an individual could perform work as a telephone solicitor, surveillance monitor, and charge account clerk.[17] These positions are available in significant numbers in the national economy. (Docket No. 3-2 at 10-11). Therefore, the ALJ determined that Plaintiff's impairment was not disabling. (R. at 29-30). As

---

[15]

Specifically, when determining that Plaintiff was not credible, the ALJ found that, "the record as a whole, particularly the conspicuous absence of findings of neurological deficits prior to and status post surgery, indicates that the claimant's [above mentioned] surgery was actually for the purposes of ...obtaining disability benefits, and... pain medications." (R. at 28). The Court finds that the ALJ appropriately considered the matter at hand by specifically listing his reasons for discounting the medical opinions that he found were not supported by evidence of the record.

[16]

The ALJ cited Dr. Firoz's report (Docket No. 3-5 at 1-8), which was corroborated in part by Dr. Maricini (Docket No. 3-5 at 9-16). Dr. Firoz assessed Plaintiff as being able to lift 20 pounds occasionally and 10 pounds frequently, sit 6 hours in an 8 hour day and stand and walk 4 hours with unlimited pushing and pulling, [having] no other limitations except for occasional limitation on kneeling." (R. at 25-26; Docket No. 3-5 at 1-8). In addition to Dr. Firoz's assessment, on April 28, 2006, a non-examining state agency physician assessed that Plaintiff could lift 10 pounds frequently, stand/walk for at least two (but less than six hours) in an eight-hour workday, sit for about six hours in an eight-hour workday, and perform all postural maneuvers occasionally. (Docket No. 3-5 at 28).

[17]

The Court notes that the ALJ never used the phrase "light work" when addressing the vocational expert, and as such, the vocational expert based his opinion on the specific abilities of Mr. Hempseed. (Docket No. 3-2 at 10-12).

such, Plaintiff's alcohol and polysubstance abuse was a contributing factor material to the determination of his disability, and Plaintiff was not disabled within the meaning of the Act. (R. at 30).

Plaintiff calls attention to the ALJ's question, asking if, considering all of the possible disorders and difficulties, maintainable jobs would exist for Plaintiff, to which he answered in the negative. (Docket No. 3-2 at 11). However, the ALJ had determined that the bipolar and/or "mood disorder" was not severe, without substance abuse. *Craigie v. Bowen*, 835 F.2d 45, 57-58 (3d Cir. 1987). Accordingly, this Court agrees with Defendant's argument that the medical evidence in the record does not support the contents of the ALJ's hypothetical question. As such, the ALJ need not accept the response to the hypothetical question. *Id*. Nor does this Court.

## VII. CONCLUSION

Based upon the evidence of record, the parties' arguments, motions, and briefs filed in support and opposition, this Court concludes that substantial evidence supports the ALJ's decision that Plaintiff is not statutorily disabled. The decision of the ALJ denying Plaintiff's application for SSI and DIB is affirmed and the Defendant's motion for summary judgment is granted. An appropriate Order follows.


*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

dated:          April 18, 2008

cc:              All counsel of record.